IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
DEL RIO DIVISION

| | | |
|---|---|---|
| CORINA CAMACHO, Individually and on behalf of G.M., a Minor; TANISHA RODRIGUEZ, Individually and on behalf of G.R., a Minor; and SELENA SANCHEZ Individually and on behalf of D.J., a Minor, <br><br>*Plaintiffs*, <br><br>v. <br><br>THE UVALDE CONSOLIDATED INDEPENDENT SCHOOL DISTRICT; PEDRO "PETE" ARREDONDO, an Individual; THE CITY OF UVALDE; MARIANO PARGAS, an Individual; MANDY GUTIERREZ, an Individual; DANIEL DEFENSE, LLC, a Limited Liability Company; OASIS OUTBACK, LLC, a Texas Limited Liability Company; FIREQUEST INTERNATIONAL, INC., a Arkansas Corporation; MOTOROLA SOLUTIONS, INC., a Delaware Corporation; SCHNEIDER ELECTRIC USA, INC., a Delaware Corporation; JOHN DOE COMPANY I, <br><br>*Defendants*. | § § § § § § § § § § § § § § § § § § § § § § § § § § § § § | C.A. No. 2:22-cv-00048 |

## MANDY GUTIERREZ'S MOTION TO DISMISS
## PURSUANT TO RULES 12(B)(1) AND (6)

Mandy Gutierrez moves to dismiss Plaintiffs' Original Complaint Pursuant to Rules 12(b)(1) and 12(b)(6), as follows:

## NATURE AND STAGE OF PROCEEDINGS

Corina Camacho, individually and on behalf of G.M., a minor; Tanisha Rodriguez, individually and on behalf of G.R., a minor; and Selena Sanchez, individually and on behalf of G.J., a minor (collectively Plaintiffs) filed suit against several defendants, including Mandy Gutierrez, former principal of Robb Elementary within the Uvalde Consolidated Independent School District (the District).[1] Specific to Gutierrez, Plaintiffs are claiming she violated 42 U.S.C. § 1983 under a state-created danger theory for allegedly using her authority to create a dangerous environment. Plaintiffs also bring two state tort claims against Gutierrez: negligence and intentional infliction of emotional distress (IIED).

## STATEMENT OF RELEVANT FACTS AS PLED BY PLAINTIFF

At all relevant times Gutierrez was the principal of Robb Elementary School, including the day the tragedy took place. Dkt. 1 at ¶ 14. Specifically, on the morning of May 24, 2022, an employee of Robb Elementary, Coach Yvette Silva, saw an individual throw a backpack over the exterior fence surrounding the school, climb over the fence, and begin shooting an assault rifle. *Id.* at ¶ 82-83. After seeing this, and under the impression he was shooting at her, Coach Silva reported the shooting on her school radio and instructed children outside on the playground to lockdown. *Id.* at ¶ 83.

Gutierrez first learned of the shooter when she heard Coach Silva's report on her school radio. *Id.* at ¶ 84. Accordingly, she began initiating lockdown procedures, which first consisted of her making a school-wide alert via a system called 'the Raptor

---

[1] The undersigned only represent Mandy Gutierrez in this matter.

application.' *Id*. However, because of a bad WIFI signal, the alert did not initiate. *Id*. After the application failed, Gutierrez called Chief Arredondo, Chief of Police for the District's Police Department, who instructed her to shut the school down. *Id*. at ¶¶ 84, 11. In response, Gutierrez instructed the head custodian to ensure all the doors were locked. *Id*. at ¶ 84. Gutierrez then locked down in her own office, and later relocated to the cafeteria. *Id*. Gutierrez never broadcast the lockdown on the school intercom system. *Id*. During this time, the armed individual proceeded to enter the school through an unlocked exterior door and entered Room 111, also unlocked. *Id*. at ¶¶ 89-90. The shooter claimed many lives and wounded many others. *See generally, id.*

## STATEMENT OF THE ISSUES

1. Plaintiffs Corina Camacho, Tanisha Rodriquez, and Selena Sanchez lack Article III standing to bring their federal claims and must be dismissed.

2. Gutierrez is entitled to qualified immunity to Plaintiffs' federal claims.

3. Plaintiffs' state law claims against Gutierrez must be dismissed because she is entitled to professional immunity.

4. Because Plaintiffs failed to exhaust administrative remedies, their state law claims must be dismissed.

5. Plaintiffs' attempt to use intentional infliction of emotional distress as a gap-filler tort should not be entertained.

## STANDARD OF REVIEW

A. *Rule 12(b)(1).*

Federal Rule of Civil Procedure 12(b)(1) allows a party to challenge the Court's exercise of subject matter jurisdiction over a case. *See Den Norske Stats Oljeselskap As v. Heeremac VOF*, 241 F.3d 420, 424 (5th Cir. 2001). "In ruling on a motion to dismiss for

lack of subject matter jurisdiction, a court may evaluate (1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Id.* A court must accept all factual allegations in the plaintiff's complaint as true, and the burden of establishing a federal court's subject matter jurisdiction rests with "the party seeking to invoke it." *See Pedrozo v. Clinton*, 610 F. Supp. 2d 730, 733 (S.D. Tex. 2009) (citing *Hartford Ins. Group v. Lou-Con, Inc.*, 293 F.3d 908, 910 (5th Cir. 2002)); *see also Lane v. Halliburton,* 529 F.3d 548, 557 (5th Cir. 2008).

### B.     *Rule 12(b)(6).*

When reviewing a motion to dismiss pursuant to Rule 12(b)(6), a court must accept all well-pleaded facts as true and view them in the light most favorable to the non-moving party. *See Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). However, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555 (2007). "[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter accepted as true, to 'state a claim to relief that is plausible on its face.'" *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ARGUMENT AND AUTHORITIES

**A.  Plaintiffs Corina Camacho, Tanisha Rodriquez, and Selena Sanchez lack Article III standing to bring constitutional claims.**

To bring a claim in federal court, a plaintiff must establish Article III standing. This requires a plaintiff to plead and prove an injury-in-fact. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). To establish an injury in fact, "a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016), as revised (May 24, 2016) (quoting *Lujan*, 504 U.S., at 560). An injury is concrete when it is 'de facto', i.e., it actually exists. *Id.* at 340. The Parents fail to allege a concrete, de facto injury that actually exists. In fact, they do not allege any type of personal injury whatsoever. The fact that they are biological mothers to the Students is immaterial to the question of whether they personally suffered a concrete injury.[2]

Moreover, in order to prevail in a Section 1983 action, "a plaintiff must allege a violation of rights secured by the Constitution or laws of the United States…." *Paul v. Davis*, 424 U.S. 693, 700-01 (1976). The Fifth Circuit has long held that plaintiffs who claim the deprivation of constitutional rights are required to prove a violation of their own ***personal*** rights. *See Coon v. Ledbetter*, 780 F.2d 1158, 1160 (5th Cir. 1986) (emphasis added). Thus, where plaintiffs fail to allege the deprivation of their own constitutional rights, they cannot establish standing necessary to assert a Section 1983 claim. *See Polk v.*

---

[2] In limited circumstances, not applicable here, a parent can bring an individual claim based on a deprivation of rights to their child. For example, the Individuals with Disabilities Education Act provides parents with the right to bring an individual claim based on a denial of a free and appropriate education to their kid(s). *See Winkelman ex rel. Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516, 531 (2007) (citing 20 U.S.C. § 1415).

5

*City of Corsicana*, 2006 U.S. Dist. WL 385127, *18-19 (N.D. Tex. 2006) ("Plaintiffs have no standing to sue for alleged acts or omissions that do not infringe upon a legally recognized right belonging to them. Furthermore, although parents certainly feel the injury to a tremendous extent when their child suffers injury, a parent has no civil right to pursue an action pursuant to § 1983 for injuries to their child.") (internal citations and insertions omitted). The Parents failure to allege a deprivation of their own personal rights requires dismissal of their 1983 claims for lack of standing.

**B.     Gutierrez is entitled to qualified immunity against the federal claims brought under Section 1983.**

   *1.     The analytical framework for the qualified immunity defense.*

"Under the doctrine of qualified immunity, government officials performing discretionary functions are shielded from civil liability 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Flores v. City of Palacios*, 381 F.3d 391, 393-94 (5th Cir. 2004) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Courts apply a two-prong test to determine whether a plaintiff can overcome an official's qualified immunity defense: (1) whether a constitutional right would have been violated on the facts alleged, and (2) whether the right at issue was "clearly established" at the time of the misconduct, rendering the conduct objectively unreasonable. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001); *see also Pearson v. Callahan*, 555 U.S. 223, 232 (2009). If the plaintiff cannot establish both prongs of the test, the defendant is entitled to qualified immunity. Courts are, however,

6

permitted to exercise their sound discretion in determining which of the two prongs to address first. *Pearson*, 555 U.S. at 236.

A right is deemed clearly established when "the contours of the right [are] sufficiently clear [such] that a reasonable official would understand that what [s]he is doing violates that right." *Wernecke v. Garcia*, 591 F.3d 386, 392 (5th Cir. 2009) (internal citations omitted). The Fifth Circuit has clarified that plaintiffs must "point to controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity." *Morgan v. Swanson*, 659 F.3d 359, 371-72 (5th Cir. 2011) (internal citations omitted); *see also Perniciaro v. Lea*, 901 F.3d 241, 256 (5th Cir. 2018) ("general propositions of law defined at high levels of generality are insufficient to define clearly established law for purposes of defeating qualified immunity") (internal citations omitted); *Vann v. City of Southaven, Miss.*, 884 F.3d 307, 310 (5th Cir. 2018) ("It is the plaintiff's burden to find a case in his favor that does not define the law at a 'high level of generality.'") (quoting *Cass v. City of Abilene*, 814 F.3d 721, 732-33 (5th Cir. 2016)).

> 2. *Plaintiffs fail to plead facts that could establish Gutierrez violated their constitutional rights, as Gutierrez had no duty to protect Plaintiffs from private violence.*

It is well-settled that students have a Fourteenth Amendment right to be free from "***state-occasioned damage***" to their bodily integrity. *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 451 (5th Cir. 1994) (emphasis added). The emphasized phrase from *Doe v. Taylor* is key, because to state a claim under Section 1983, a plaintiff must "(1) allege a violation of a right secured by the Constitution or laws of the United States and (2)

demonstrate that the alleged deprivation was committed by a person acting under color of state law." *See Doe v. Covington Cnty. Sch. Dist.*, 675 F.3d 849, 854-55 (5th Cir. 2012). And absent narrow exceptions, "nothing in the language of the Due Process Clause itself requires the State to protect . . . its citizens against invasion by private actors." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989) (omission added). Thus, generally, "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *See id.* at 197; *see also Covington*, 675 F.3d at 855; *Estate of Brown v. Cypress-Fairbanks Indep. Sch. Dist.*, 863 F. Supp. 2d 632, 634 (S.D. Tex. 2012).

Here, Plaintiffs' claims are predicated on an injury caused by a criminal who was a trespasser on District property – *i.e.*, a private actor. Thus, absent an applicable exception to the general rule, Plaintiffs fail to state a violation of their constitutional rights and Gutierrez is entitled to qualified immunity. There are only two potential exceptions to this general rule. *See Covington*, 675 F.3d at 853-64. As explained below, there is no applicable exception to save Plaintiffs' claims.

> i. The Fifth Circuit categorically rejects the special relationship theory of liability and Plaintiffs, appropriately, do not attempt to rely on it.

The first exception, endorsed by the Supreme Court in *DeShaney*, is the "special relationship" doctrine. *See DeShaney*, 489 U.S. at 198-200; *Covington*, 675 F.3d at 855-56. The Fifth Circuit has categorically rejected the special relationship theory in the public-school context. *See id.* at 863-64. Consequently, Plaintiffs' claims cannot rest on the special relationship theory, and they do not invoke it.

>  ii. The state-created danger theory has never been recognized by the Fifth Circuit and, as such, there is not a clearly established law Gutierrez could have violated.

The second exception is the "state-created danger" theory. *See Covington*, 675 F.3d at 863-64. Under the state-created danger theory, a state actor may be liable under § 1983 if the state actor created or had actual knowledge of a dangerous situation and affirmatively placed the plaintiff in that situation. *Id.* at 854-55.

The state-created danger theory has never been recognized by the Fifth Circuit. *Covington*, 675 F.3d at 863-64. And, for purposes of the qualified immunity analysis, it follows that an unrecognized theory cannot be "clearly established" law. In fact, the Fifth Circuit has consistently held that a constitutional right to be free from state-created dangers is not "clearly established" for qualified immunity purposes. For example, as recently as June 2022, the Fifth Circuit, in *Watts v. Northside Independent School District*, concluded, once again, that it has "repeatedly declined to recognize the state-created danger doctrine" and a claim that has not been expressly recognized "is the antithesis of a clearly established one." 37 F.4th 1094, 1096 (5th Cir. 2022) (internal citations omitted); *see Keller v. Fleming*, 952 F.3d 216, 227 (5th Cir. 2020); *Chavis v. Borden*, 621 F. App'x 283, 289 (5th Cir. 2015); *Saenz v. City of McAllen*, 396 F. App'x 173, 178 (5th Cir. 2010) ("The state created danger theory has not been applied in this circuit with 'obvious clarity' to the specific conduct in question such that a reasonable officer would be aware that his actions were unlawful."); *Beltran v. City of El Paso*, 367 F.3d 299, 308 (5th Cir. 2004); *McClendon v. City of Columbia*, 305 F.3d 314, 328 (5th Cir. 2002). This clear line of precedent requires dismissal of Plaintiffs' Section 1983 claim against Gutierrez.

Moreover, even if *Watts* wasn't dispositive of this issue (and it clearly is), other circuits' recognition of the state-created danger theory of liability does not make it "clearly established law" in the Fifth Circuit. Indeed, the Fifth Circuit concluded that the "recognition of the state-created danger doctrine in *six circuits* was insufficient to create a robust consensus" because the circuits were not "unanimous in its 'contours or its application to a factual context similar to that of the instant case.'" *Morrow v. Meachum*, 917 F.3d 870, 879-80 (5th Cir. 2019) (citing *McClendon,* 305 F.3d at 331-32); *see also Dist. of Columbia v. Wesby*, 138 S. Ct. 577, 591 n.8 (2018) (observing that the Supreme Court has not yet held that circuit court cases can constitute clearly established law). The Fifth Circuit also stated "[t]he reluctance of this court ... to embrace some version of the state-created danger theory despite numerous opportunities to do so suggests that, regardless of the status of this doctrine in other circuits, a reasonable officer in this circuit would, even today, be unclear as to whether there is a right to be free from 'state-created danger.'" *McClendon,* 305 F.3d at 332 n.12.

Therefore, this Court does not have to decide whether Plaintiffs might have a viable 1983 claim against Gutierrez because the state-created danger theory is not clearly established law. *Pearson*, 555 U.S. at 236; *see also Beltran*, 367 F.3d at 307 ("This court has consistently refused to recognize a 'state-created danger' theory of § 1983 liability even where the question of the theory's viability has been squarely presented"); *see also Cook v. Hopkins*, 795 F. App'x 906, 913-14 (5th Cir. 2019), *cert. denied*, 140 S. Ct. 2643, 206 L. Ed. 2d 714 (2020) (dismissing due process claim against individual defendants even though plaintiff might have had a viable claim "if this circuit recognized the state-created

10

danger theory."). In sum, Plaintiffs cannot claim that the state-created danger theory of liability is clearly established when this Circuit has never fully recognized it. And in the absence of a violation of a clearly established constitutional right, Gutierrez is entitled to qualified immunity as a matter of law.

   3. *Even if the Fifth Circuit had adopted the state-created danger exception, Plaintiffs' claim fails to meet the elements to state a cause of action.*

Even though the Fifth Circuit has consistently declined to recognize the state-created danger theory, the Court has outlined the elements of this cause of action should the Court recognize this theory in the future. *See Scanlan v. Texas A&M University*, 343 F.3d 533, 537-38 (5th Cir. 2003); *Covington*, 675 F.3d at 865. The Fifth Circuit has explained that the state-created danger theory (if recognized) would require "a plaintiff show [1] the defendants used their authority to create a dangerous environment for the plaintiff and [2] that the defendants acted with deliberate indifference to the plight of the plaintiff." *Covington*, 675 F.3d at 865 (citing to *Scanlan*, 343 F.3d at 537-38).

First, there are no allegations that would allow this Court to conclude that Gutierrez used her authority to create the dangerous environment that existed, or that she had actual knowledge of the situation before it occurred. Next, Plaintiffs fail to allege facts that would allow this court to find Gutierrez was deliberately indifferent. The Fifth Circuit has made it clear that deliberate indifference is a high burden, equivalent to a lesser form of intent. *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211 (5th Cir. 1998); *Taylor*, 15 F.3d at 451; *I.L. v. Houston Indep. Sch. Dist.*, 776 F. App'x 839 (5th Cir. 2019); *Sanches v. Carrollton Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156 (5th Cir. 2011). At best, Plaintiffs allege

Gutierrez was negligent by not ensuring that locks were repaired and routinely used, and by not using the intercom to announce the gunman's presence, which is insufficient to state a viable state-created danger claim. *See* Dkt. 1 at ¶¶ 84, 118, 142; *see also McClendon*, 305 F.3d at 325 ("Regardless of the theory of liability that a plaintiff is pursuing, in order to state a viable substantive due process claim the plaintiff must demonstrate that the state official acted with culpability beyond mere negligence."). Likewise, nothing indicates Gutierrez affirmatively placed the Plaintiffs in danger. So, even if the Fifth Circuit recognized a state-created danger theory, Plaintiffs' claim under this theory would still fail.

**C.     Gutierrez is a professional employee of the District and therefore entitled to professional immunity to Plaintiffs' state law claims.**

The Texas Education Code provides in part:

> A professional employee of a school district is not personally liable for any act that is incident to or within the scope of the duties of the employee's position of employment and that involves the exercise of judgment or discretion on the part of the employee except in circumstances in which a professional employee uses excessive force in the discipline of students or negligence resulting in bodily injury to students.

Tex. Educ. Code § 22.0511(a); s*ee also LeLeaux v. Hamshire-Fannett Indep. Sch. Dist.*, 835 S.W.2d 49, 52-53 (Tex. 1992). Using Plaintiffs' own pleadings, Plaintiffs allege Gutierrez was at all relevant times principal of the District. *See* Dkt. 1 at ¶ 14. As such, Gutierrez qualifies as a "professional employee of a school district." *See* Tex. Educ. Code § 22.051(a)(1).

Further, and as far as one can gather from the other facts pled, any actions taken or inaction by Gutierrez as alleged by Plaintiffs were exercises of judgment within the scope

of her employment and duties as the principal of one of the District's campuses as a matter of law. *See generally,* Dkt. 1. To be sure, "[i]nvestigating and acting on gathered facts has been characterized as a discretionary function." *Fowler v. Szostek*, 905 S.W.2d 336, 342 (Tex. App.—Houston [1st Dist.] 1995, no writ) (citing *Albright v. Department of Human Serv.*, 859 S.W.2d 575, 578 (Tex. App.—Houston [1st Dist.] 1993, no writ)); *see also Ramos v. Tex. Dep't of Pub. Safety,* 35 S.W.3d 723, 727 (Tex. App.—Houston [1st Dist.] 2000, pet. denied) ("If an action involves personal deliberation, decision, and judgment, it is discretionary."). Additionally, responding to an emergency situation, which is what Gutierrez was doing, is routinely considered by courts to be a discretionary function as a matter of law. *See City of San Angelo Fire Dep't v. Hudson*, 179 S.W.3d 695, 704 (Tex. App.—Austin 2005, no pet.) (manner of firefighters' driving in response to emergency call was discretionary function as matter of law); *see also City of Houston v. Flaniken*, 108 S.W.3d 555, 557 (Tex. App.—Houston [14th Dist.] 2003, no pet.) (manner of operating ambulance in response to emergency situation was discretionary function as matter of law); *City of Austin v. Albarran*, No. 03-10-00328-CV, 2011 WL 2533751, at *4 (Tex. App.—Austin June 23, 2011, no pet.).

As plead, Plaintiffs' facts establish that Gutierrez was both, responding to an emergency situation and acting on gathered facts. For example, Plaintiffs plead that when the Raptor application failed, Gutierrez immediately phoned the chief of police for the District who informed her to shut the school down. *See* Dkt. 1 ¶ 84. This led to Gutierrez instructing the head custodian to ensure all the doors were locked. *Id.* Clearly, the decisions that Gutierrez made, including the decision not to communicate the lockdown alert over

the school's intercom, were exercises of judgment based on the facts available to her. *Id.* Thus, because Gutierrez's actions and inactions were exercises of judgment as a matter of law, her professional immunity remains intact.

Moreover, neither exception laid out in the Texas Education Code is applicable. To restate them, the Code provides personal professional immunity "…except in circumstances in which a professional employee uses excessive force in the discipline of students or negligence resulting in bodily injury to students." Tex. Educ. Code § 22.0511(a). It is well-established that in both instances, either where a professional employee uses excessive force or where the employee acts with negligence and causes bodily injury to students, the professional employee must be in the process of disciplining a student. *See Barr v. Bernhard*, 562 S.W.2d 844, 849 (Tex. 1978) ("We conclude that the Legislature intended… to limit the liability of professional school employees to certain acts incident to the disciplining of students."); *see also Rogers v. Irving Indep. Sch. Dist.*, No. 11-93-227-CV, 1994 WL 16189731, at \*1 (Tex. App.—Eastland Feb. 17, 1994, no writ) ("The exception applies only to circumstances involving the discipline of students."). Because Plaintiffs have failed to allege anything to suggest Gutierrez was disciplining a student in any capacity, their claims must be dismissed.

**D.     All state claims against Gutierrez are barred as Plaintiffs have failed to exhaust all remedies.**

The Texas Education Code provides an additional protection to Gutierrez under Section 22.0514. Under this section, "a person may not file suit against a professional employee of a school district unless the person has exhausted the remedies provided by the

school district for resolving the complaint." Tex. Educ. Code § 22.0514. These remedies, for example, consist of going through the District's grievance process.[3] Plaintiffs' failure to first initiate the administrative grievance process when attempting to hold Ms. Gutierrez liable eliminates the trial courts' subject matter jurisdiction. *See Melendez v. Houston Indep. Sch. Dist.,* 418 S.W.3d 701, 709 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (finding that, because the plaintiff "did not exhaust, or even initiate, the administrative process … the trial court was without jurisdiction to hear her claims."). Thus, because the filing of this lawsuit against Gutierrez and the District appears to be the first remedy sought by Plaintiffs, they have failed to exhaust the administrative remedies provided to them and their claims must be dismissed.

E. **Plaintiffs are not entitled to use IIED as a gap-filler tort as they allege more established tort doctrines.**

The Texas Supreme Court has identified the claim of IIED as a "gap-filler" tort, "judicially created for the limited purpose of allowing recovery in those rare instances in which a defendant intentionally inflicts severe emotional distress in a manner so unusual that the victim has no other recognized theory of redress." *Hoffmann-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004) (citing to *Standard Fruit and Vegetable Co. v. Johnson*, 985 S.W.2d 62, 68 (Tex. 1998)). The Court cautions that IIED "should not be extended to circumvent limitations placed on the recovery of mental anguish damages under more established tort doctrines." *Johnson*, 985 S.W.2d at 68 (Tex. 1998). In this

---

[3] A link to the District's Board Policy can be found on its website at: https://www.ucisd.net/domain/17.

case, Plaintiffs have alleged numerous other causes of actions. Therefore, Plaintiffs' IIED claim for relief should be dismissed against Gutierrez.

## CONCLUSION AND PRAYER

Mandy Gutierrez respectfully requests that this Court grant her motion to dismiss and dismiss Plaintiffs' claims against her with prejudice.

Respectfully submitted,

ROGERS, MORRIS & GROVER, L.L.P.

_____
CLAY T. GROVER
Attorney-in-Charge
State Bar No. 08550280
Fed. I.D. No. 15064
cgover@rmgllp.com
JONATHAN G. BRUSH
State Bar No. 24045576
Fed. I.D. No. 619970
jbrush@rmgllp.com
5718 Westheimer, Suite 1200
Houston, Texas 77057
Telephone: 713/960-6000
Facsimile: 713/960-6025

DAVIS, CEDILLO & MENDOZA, INC.

/s/ Ricardo G. Cedillo
By Permission Clay T. Grover
_____
RICARDO G. CEDILLO
State Bar No. 04043600
rcedillo@lawdcm.com
755 E. Mulberry Avenue, Suite 250
San Antonio, Texas 78212
Telephone: 210/822-6666

ATTORNEYS FOR MANDY GUTIERREZ

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 14, 2022, a true and correct copy of the foregoing was served on counsel of record *via* the CM/ECF system.

**Stephanie Sherman**
ssherman@baumhedlundlaw.com
**Monique Alarcon** (Pro Hac Vice to be filed)
malarcon@baumhedlundlaw.com
**Shawn C. Brown**
shawn@shawnbrownlaw.com
*Attorneys for Plaintiffs*

_____
Counsel for Mandy Gutierrez