# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# DEL RIO DIVISION

| | | |
|---|---|---|
| CORINA CAMACHO, Individually and on behalf of G.M., a Minor; TANISHA RODRIGUEZ, Individually and on behalf of G.R., a Minor; and SELENA SANCHEZ Individually and on behalf of D.J., a Minor; AMANDA ESCOBEDO, Individually and on behalf of A.T., a Minor and on behalf of A.E., a Minor; and ANGELICA TALLEY, Individually and on behalf of M.T., a Minor, § § § § § § § § § § § | | |
| *Plaintiffs*, § § | | |
| v. § § § | | C.A. No. 2:22-cv-00048 |
| THE UVALDE CONSOLIDATED INDEPENDENT SCHOOL DISTRICT; PEDRO "PETE" ARREDONDO, an Individual; THE CITY OF UVALDE; MARIANO PARGAS, an Individual; MANDY GUTIERREZ, an Individual; UVALDE COUNTY; SHERIFF RUBEN NOLASCO, an Individual; TEXAS DEPARTMENT OF PUBLIC SAFETY; DANIEL DEFENSE, LLC, a Limited Liability Company; OASIS OUTBACK, LLC, a Texas Limited Liability Company; FIREQUEST INTERNATIONAL, INC., an Arkansas Corporation; MOTOROLA SOLUTIONS, INC., a Delaware Corporation; JOHN DOE COMPANY I, and JOHN DOES 1-100, § § § § § § § § § § § § § § § § § § § | | |
| *Defendants*. § | | |

## MANDY GUTIERREZ'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT PURSUANT TO RULES 12(B)(1) AND (6)

Mandy Gutierrez moves to dismiss Plaintiffs' First Amended Complaint Pursuant to Rules 12(b)(1) and 12(b)(6), as follows:

## NATURE AND STAGE OF PROCEEDINGS

Corina Camacho, individually and on behalf of G.M., a minor; Tanisha Rodriguez, individually and on behalf of G.R., a minor; Selena Sanchez, individually and on behalf of G.J., a minor; Amanda Escobedo, individually and on behalf of A.T., a minor, and on behalf of A.E., a minor; and Angelica Talley, individually and on behalf of M.T., a minor, (collectively Plaintiffs) filed suit against several defendants, including Mandy Gutierrez, former principal of Robb Elementary within the Uvalde Consolidated Independent School District (the District).[1] Specific to Gutierrez, Plaintiffs are claiming she violated 42 U.S.C. § 1983 under a state-created danger theory, under the special relationship doctrine, under a failure to train and supervise theory, and lastly, Plaintiffs claim that Gutierrez violated Plaintiffs' Fourth Amendment right against unreasonable seizures. Plaintiffs also bring two state tort claims against Gutierrez: negligence and intentional infliction of emotional distress (IIED).

## STATEMENT OF RELEVANT FACTS AS PLED BY PLAINTIFF

At all relevant times Gutierrez was the principal of Robb Elementary School, including the day the tragedy took place. Dkt. 12 at ¶ 22. Specifically, on the morning of May 24, 2022, an employee of Robb Elementary, Coach Yvette Silva, saw an individual throw a backpack over the exterior fence surrounding the school, climb over the fence, and begin shooting an assault rifle. *Id*. at ¶ 113-114. After seeing this, and under the impression he was shooting at her, Coach Silva reported the shooting on her school radio and instructed children outside on the playground to lockdown. *Id*. at ¶ 114.

---

[1] The undersigned only represent Mandy Gutierrez in this matter.

Gutierrez first learned of the shooter when she heard Coach Silva's report on her school radio. *Id*. at ¶ 115 Accordingly, she began initiating lockdown procedures, which first consisted of her making a school-wide alert via a system called 'the Raptor application.' *Id*. However, because of a bad WIFI signal, the alert did not initiate. *Id*. After the application failed, Gutierrez called Chief Arredondo, Chief of Police for the District's Police Department, who instructed her to shut the school down. *Id*. at ¶¶ 115, 16. In response, Gutierrez instructed the head custodian to ensure all the doors were locked. *Id*. at ¶ 115. Gutierrez then locked down in her own office, and later relocated to the cafeteria. *Id*. Gutierrez never broadcast the lockdown on the school intercom system. *Id*. During this time, the armed individual proceeded to enter the school through an unlocked exterior door and entered Room 111, also unlocked. *Id*. at ¶¶ 121-122. The shooter claimed many lives and wounded many others. *See generally, id.*

## STATEMENT OF THE ISSUES

1. Plaintiffs Corina Camacho, Tanisha Rodriquez, Selena Sanchez, Amanda Escobedo, and Angelica Talley lack Article III standing to bring their federal claims and must be dismissed.

2. Gutierrez is entitled to qualified immunity to Plaintiffs' federal claims.

3. Plaintiffs' state law claims against Gutierrez must be dismissed because she is entitled to professional immunity.

4. Because Plaintiffs failed to exhaust administrative remedies, their state law claims must be dismissed.

5. Plaintiffs' attempt to use intentional infliction of emotional distress as a gap-filler tort should not be entertained.

## STANDARD OF REVIEW

A. *Rule 12(b)(1).*

Federal Rule of Civil Procedure 12(b)(1) allows a party to challenge the Court's exercise of subject matter jurisdiction over a case. *See Den Norske Stats Oljeselskap As v. Heeremac VOF*,

241 F.3d 420, 424 (5th Cir. 2001). "In ruling on a motion to dismiss for lack of subject matter jurisdiction, a court may evaluate (1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Id.* A court must accept all factual allegations in the plaintiff's complaint as true, and the burden of establishing a federal court's subject matter jurisdiction rests with "the party seeking to invoke it." *See Pedrozo v. Clinton*, 610 F. Supp. 2d 730, 733 (S.D. Tex. 2009) (citing *Hartford Ins. Group v. Lou-Con, Inc.*, 293 F.3d 908, 910 (5th Cir. 2002)); *see also Lane v. Halliburton,* 529 F.3d 548, 557 (5th Cir. 2008).

B.  ***Rule 12(b)(6).***

When reviewing a motion to dismiss pursuant to Rule 12(b)(6), a court must accept all well-pleaded facts as true and view them in the light most favorable to the non-moving party. *See Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). However, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555 (2007). "[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter accepted as true, to 'state a claim to relief that is plausible on its face.'" *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ARGUMENT AND AUTHORITIES

A.  **Plaintiffs Corina Camacho, Tanisha Rodriquez, Selena Sanchez, Amanda Escobedo, and Angelica Talley lack Article III standing to bring constitutional claims.**

To bring a claim in federal court, a plaintiff must establish Article III standing. This requires a plaintiff to plead and prove an injury-in-fact. *Lujan v. Defenders of Wildlife*, 504 U.S.

555, 560 (1992). To establish an injury in fact, "a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016), as revised (May 24, 2016) (quoting *Lujan*, 504 U.S., at 560). An injury is concrete when it is 'de facto', *i.e.*, it actually exists. *Id.* at 340. Here, the Parents do not allege any type of personal injury whatsoever. The fact that they are the biological mothers of the Students is immaterial to the question of whether they personally suffered a concrete injury.[2] As such, the Parents failure to allege a concrete, de facto injury deprives this Court of subject matter jurisdiction, and their claims must be dismissed.

Moreover, to prevail in a Section 1983 action, "a plaintiff must allege a violation of rights secured by the Constitution or laws of the United States…." *Paul v. Davis*, 424 U.S. 693, 700-01 (1976). The Fifth Circuit has long held that plaintiffs who claim the deprivation of constitutional rights are required to prove a violation of their own **personal** rights. *See Coon v. Ledbetter*, 780 F.2d 1158, 1160 (5th Cir. 1986). Thus, where plaintiffs fail to allege the deprivation of their own constitutional rights, they cannot establish standing necessary to assert a Section 1983 claim. *See Polk v. City of Corsicana*, 2006 U.S. Dist. WL 385127, *18-19 (N.D. Tex. 2006) ("Plaintiffs have no standing to sue for alleged acts or omissions that do not infringe upon a legally recognized right belonging to them. Furthermore, although parents certainly feel the injury to a tremendous extent when their child suffers injury, a parent has no civil right to pursue an action pursuant to § 1983 for injuries to their child.") (internal citations and insertions omitted). The Parents failure to allege

---

[2] In limited circumstances, not applicable here, a parent can bring an individual claim based on a deprivation of rights to their child. For example, the Individuals with Disabilities Education Act provides parents with the right to bring an individual claim based on a denial of a free and appropriate education to their child. *See Winkelman ex rel. Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516, 531 (2007) (citing 20 U.S.C. § 1415).

a deprivation of their own personal rights requires dismissal of their 1983 claims for lack of standing.

**B.     Gutierrez is entitled to qualified immunity against the federal claims brought under Section 1983.**

"Under the doctrine of qualified immunity, government officials performing discretionary functions are shielded from civil liability 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Flores v. City of Palacios*, 381 F.3d 391, 393-94 (5th Cir. 2004) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Courts apply a two-prong test to determine whether a plaintiff can overcome an official's qualified immunity defense: (1) whether a constitutional right would have been violated on the facts alleged, and (2) whether the right at issue was "clearly established" at the time of the misconduct, rendering the conduct objectively unreasonable. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001); *see also Pearson v. Callahan*, 555 U.S. 223, 231 (2009). If the plaintiff cannot establish both prongs of the test, *i.e.*, that a constitutional right exists and that the right is clearly established, the defendant is entitled to qualified immunity. Courts are further permitted to exercise their sound discretion in determining which of the two prongs to address first. *Pearson*, 555 U.S. at 236. Whichever prong this Court decides to address first, however, will require dismissal of Plaintiffs' claims – as they cannot establish either prong for any of their federal claims.

> 1. *Plaintiffs fail to plead facts that could establish Gutierrez violated their constitutional rights, as Gutierrez had no duty to protect Plaintiffs from private violence.*

It is well-settled that students have a Fourteenth Amendment right to be free from "*state-occasioned damage*" to their bodily integrity. *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 451 (5th Cir. 1994) (emphasis added). The emphasized phrase from *Doe v. Taylor* is key, because to state a claim under Section 1983, a plaintiff must "(1) allege a violation of a right secured by the

6

Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *See Doe v. Covington Cnty. Sch. Dist.*, 675 F.3d 849, 854-55 (5th Cir. 2012). And absent narrow exceptions, "nothing in the language of the Due Process Clause itself requires the State to protect . . . its citizens against invasion by private actors." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989) (omission added). Thus, generally, "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *See id.* at 197; *see also Covington*, 675 F.3d at 855; *Estate of Brown v. Cypress-Fairbanks Indep. Sch. Dist.*, 863 F. Supp. 2d 632, 634 (S.D. Tex. 2012).

Here, Plaintiffs' claims are predicated on an injury caused by a criminal who was a trespasser on District property – *i.e.*, a private actor. Thus, absent an applicable exception to the general rule, Plaintiffs fail to state a violation of their constitutional rights and Gutierrez is entitled to qualified immunity. There are only two potential exceptions to this general rule: the special relationship doctrine and the state-created danger theory. *See Covington*, 675 F.3d at 853-64. As explained below, neither exception can save Plaintiffs' claims, as they have both been clearly rejected, as opposed to being clearly established, by the Fifth Circuit. And even if this Court finds otherwise, Plaintiffs have failed to plead facts sufficient to establish their applicability.

> 2. *Plaintiffs' failure to plead a violation of clearly established law dooms their attempt to overcome Principal Gutierrez's qualified immunity.*

A right is deemed clearly established when "the contours of the right [are] sufficiently clear [such] that a reasonable official would understand that what [s]he is doing violates that right." *Wernecke v. Garcia*, 591 F.3d 386, 392 (5th Cir. 2009) (internal citations omitted). The Fifth Circuit has clarified that plaintiffs must "point to controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of

7

particularity." *Morgan v. Swanson*, 659 F.3d 359, 371-72 (5th Cir. 2011) (internal citations omitted); *see also Perniciaro v. Lea*, 901 F.3d 241, 256 (5th Cir. 2018) ("general propositions of law defined at high levels of generality are insufficient to define clearly established law for purposes of defeating qualified immunity") (internal citations omitted); *Vann v. City of Southaven, Miss.*, 884 F.3d 307, 310 (5th Cir. 2018) ("It is the plaintiff's burden to find a case in his favor that does not define the law at a 'high level of generality.'") (quoting *Cass v. City of Abilene*, 814 F.3d 721, 732-33 (5th Cir. 2016)).

> i. <u>The Special Relationship Doctrine</u>
>> **a. The Fifth Circuit categorically rejects the special relationship theory of liability in the public-school context.**

The first exception, endorsed by the Supreme Court in *DeShaney*, is the "special relationship" doctrine. *See DeShaney*, 489 U.S. at 198-200; *Covington*, 675 F.3d at 855-56. This doctrine can work to hold a state actor liable under § 1983 when the state actor creates a special relationship with an individual, thus creating a duty to protect, and then fails to protect that individual. *See Covington*, 675 F.3d at 855 ("[A] state may create a special relationship with a particular citizen, requiring the state to protect him from harm, when the state takes a person into its custody and holds him there against his will.") (quoting *DeShaney*, 489 U.S. at 199-200) (quotation marks omitted).

In the public-school context, however, the Fifth Circuit has emphatically and categorically rejected the special relationship theory. *See Covington*, 675 F.3d at 857 ("We reaffirm, then, decades of binding precedent: a public school does not have a *DeShaney* special relationship with its students requiring the school to ensure the students' safety from private actors.); *see also Leffall v. Dallas Indep. Sch. Dist.*, 28 F.3d 521, 522, 529 (5th Cir. 1994) (finding no special relationship between a high school and a student fatally wounded by a gunshot fired in the school parking lot

after a school dance); *Johnson v. Dallas Indep. Sch. Dist.*, 38 F.3d 198, 199, 202–03 (5th Cir. 1994) (finding no special relationship between a high school and a student shot and killed in the school hallway during the school day by a boy who was not a student but had gained access to the school); *Doe v. San Antonio Indep. Sch. Dist.*, 197 Fed. Appx. 296, 298–301 (5th Cir. 2006); *Teague v. Tex. City Indep. Sch. Dist.*, 185 Fed. Appx. 355, 357 (5th Cir. 2006). Accordingly, Plaintiffs' claims cannot rest on the special relationship theory, as it has been categorically rejected and, thus, is the antithesis of clearly established law. *See Watts v. Northside Indep. Sch. Dist.*, 37 F.4th 1094, 1096 (5th Cir. 2022).

> **b. Even if the Fifth Circuit hadn't rejected the special relationship doctrine in the public-school context, Plaintiffs fail to plead facts to establish its application in this case.**

Even if the Fifth Court recognized the special relationship doctrine in public-school contexts, there is no allegation in Plaintiff's Complaint of any such special relationship between Gutierrez and the Plaintiffs. A special relationship exists "only when the person is involuntarily taken into state custody and held against [their] will through the affirmative power of the state [actor]." *Walton v. Alexander*, 44 F.3d 1297, 1304 (5th Cir. 1995) (en banc). Here, Plaintiffs do not plead that Gutierrez personally took them into custody. As such, Gutierrez had no constitutional duty to protect them from the private harm. *See generally Patel v. Kent Sch. Dist.*, 648 F.3d 965 (9th Cir. 2011) (collecting cases and rejecting a section 1983 "special relationship" claim when a female special education student was allegedly raped by another special education student in a school restroom); *Teague v. Tex. City Indep. Sch. Dist.*, 185 F. App'x 355, 357-58 (5th Cir. 2006) (holding that there was no "special relationship" between school and a special education student who was allegedly sexually assaulted by another special education student in the school restroom); *D.R. by L.R. v. Middle Bucks Area Vo. Tech. Sch.*, 972 F.2d 1364 (3rd Cir. 1992)

9

(holding that there was no "special relationship" between school and students, who were allegedly sexually assaulted in school restroom); *Johnson v. Dallas Indep. Sch. Dist.*, 38 F.3d 198, 203 (5th Cir. 1994) (Fourteenth Amendment does not make schools virtual guarantors of student safety).

      ii.      <u>State-Created Danger Theory</u>

            **a.**      **The state-created danger theory has never been recognized by the Fifth Circuit and, as such, there is not a clearly established law Gutierrez could have violated.**

The second exception is the "state-created danger" theory. *See Covington*, 675 F.3d at 863-64. Under the state-created danger theory, a state actor may be liable under § 1983 if the state actor created or had actual knowledge of a dangerous situation and affirmatively placed the plaintiff in that situation. *Id.* at 854-55. The state-created danger theory has never been recognized by the Fifth Circuit. *Covington*, 675 F.3d at 863-64. And, for purposes of the qualified immunity analysis, it follows that an unrecognized theory cannot be "clearly established" law.

Specifically, the Fifth Circuit has consistently held that a constitutional right to be free from state-created dangers is not "clearly established" for qualified immunity purposes. For example, as recently as June 2022, the Fifth Circuit, in *Watts v. Northside Independent School District*, concluded, once again, that it has "repeatedly declined to recognize the state-created danger doctrine" and a claim that has not been expressly recognized "is the antithesis of a clearly established one." 37 F.4th at 1096 (internal citations omitted); *see Keller v. Fleming*, 952 F.3d 216, 227 (5th Cir. 2020); *Chavis v. Borden*, 621 F. App'x 283, 289 (5th Cir. 2015); *Saenz v. City of McAllen*, 396 F. App'x 173, 178 (5th Cir. 2010) ("The state created danger theory has not been applied in this circuit with 'obvious clarity' to the specific conduct in question such that a reasonable officer would be aware that his actions were unlawful."); *Beltran v. City of El Paso*, 367 F.3d 299, 308 (5th Cir. 2004); *McClendon v. City of Columbia*, 305 F.3d 314, 328 (5th Cir.

10

2002). This clear line of precedent requires dismissal of Plaintiffs' Section 1983 claim against Gutierrez.

Moreover, even if *Watts* wasn't dispositive of this issue (and it clearly is), other circuits' recognition of the state-created danger theory of liability does not make it "clearly established law" in the Fifth Circuit. Indeed, the Fifth Circuit concluded that the "recognition of the state-created danger doctrine in *six circuits* was insufficient to create a robust consensus" because the circuits were not "unanimous in its 'contours or its application to a factual context similar to that of the instant case.'" *Morrow v. Meachum*, 917 F.3d 870, 879-80 (5th Cir. 2019) (citing *McClendon,* 305 F.3d at 331-32); *see also Dist. of Columbia v. Wesby*, 138 S. Ct. 577, 591 n.8 (2018) (observing that the Supreme Court has not yet held that circuit court cases can constitute clearly established law). The Fifth Circuit also stated "[t]he reluctance of this court ... to embrace some version of the state-created danger theory despite numerous opportunities to do so suggests that, regardless of the status of this doctrine in other circuits, a reasonable officer in this circuit would, even today, be unclear as to whether there is a right to be free from 'state-created danger.'" *McClendon,* 305 F.3d at 332 n.12.

Therefore, this Court does not have to decide whether Plaintiffs might have a viable 1983 claim against Gutierrez because the state-created danger theory is not clearly established law. *Pearson*, 555 U.S. at 236; *see also Beltran*, 367 F.3d at 307 ("This court has consistently refused to recognize a 'state-created danger' theory of § 1983 liability even where the question of the theory's viability has been squarely presented"); *see also Cook v. Hopkins*, 795 F. App'x 906, 913-14 (5th Cir. 2019), *cert. denied*, 140 S. Ct. 2643 (2020) (dismissing due process claim against individual defendants even though plaintiff might have had a viable claim "if this circuit recognized the state-created danger theory."). In sum, Plaintiffs cannot claim that the state-created

danger theory of liability is clearly established when this Circuit has never fully recognized it. And in the absence of a violation of a clearly established constitutional right, Gutierrez is entitled to qualified immunity as a matter of law.

> **b.** **Even if the Fifth Circuit had adopted the state-created danger exception, Plaintiffs' claim fails to meet the elements to state a cause of action.**

Even though the Fifth Circuit has consistently declined to recognize the state-created danger theory, the Court has outlined the elements of this cause of action should the Court recognize this theory in the future. *See Scanlan v. Texas A&M University*, 343 F.3d 533, 537-38 (5th Cir. 2003); *Covington*, 675 F.3d at 865. The Fifth Circuit has explained that the state-created danger theory (if recognized) would require "a plaintiff show [1] the defendants used their authority to create a dangerous environment for the plaintiff and [2] that the defendants acted with deliberate indifference to the plight of the plaintiff." *Covington*, 675 F.3d at 865 (citing to *Scanlan*, 343 F.3d at 537-38).

First, there are no allegations that would allow this Court to conclude that Gutierrez used her authority to create the dangerous environment that existed, or that she had actual knowledge of the situation before it occurred. Next, Plaintiffs fail to allege facts that would allow this court to find Gutierrez was deliberately indifferent. The Fifth Circuit has made it clear that deliberate indifference is a high burden, equivalent to a lesser form of intent. *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211 (5th Cir. 1998); *Taylor*, 15 F.3d at 451; *I.L. v. Houston Indep. Sch. Dist.*, 776 F. App'x 839 (5th Cir. 2019); *Sanches v. Carrollton Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156 (5th Cir. 2011). At best, Plaintiffs allege Gutierrez was negligent by not ensuring that locks were repaired and routinely used, and by not using the intercom to announce the gunman's presence, which is insufficient to state a viable state-created danger claim. *See* Dkt. 12 at ¶¶ 115, 158, 183;

*see also McClendon*, 305 F.3d at 325 ("Regardless of the theory of liability that a plaintiff is pursuing, in order to state a viable substantive due process claim the plaintiff must demonstrate that the state official acted with culpability beyond mere negligence."). Likewise, nothing indicates Gutierrez affirmatively placed the Plaintiffs in danger. So, even if the Fifth Circuit recognized a state-created danger theory, Plaintiffs' claim under this theory would still fail.

> 3. *Plaintiffs do not assert a viable failure to train or supervise claim under Section 1983 against Principal Gutierrez.*

Plaintiffs fail to assert a viable failure to train or supervise claim against Gutierrez. To establish such a claim, Plaintiffs must allege facts that defeat qualified immunity. As noted above, the necessary prongs that must be established to defeat qualified immunity are that a constitutional right had been violated, and that the right or duty at issue was "clearly established" at the time of the misconduct. *See Saucier*, 533 U.S. at 201; *see also Pearson*, 555 U.S. at 232. First, Plaintiffs fail to allege that Gutierrez violated any of their constitutional rights in failing to train or supervise the law enforcement officers. Additionally, Plaintiffs will not be able to point to any clearly established law that demonstrates Gutierrez, as the Principal of the Elementary School, had any duty to even train or supervise the officers. As such, her qualified immunity remains intact.

If this Court finds that Plaintiffs can somehow overcome Gutierrez's qualified immunity, their claims nonetheless fail. Establishing liability under Section 1983 based on the failure to train or supervise requires a plaintiff demonstrate "(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." *Smith v. Brenoettsy*, 158 F.3d 908, 911–12 (5th Cir. 1998); *see also Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 170 (5th Cir. 2010); *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 849 (5th Cir. 2009) ("The failure to train can amount to a policy if there is deliberate

indifference to an obvious need for training where citizens are likely to lose their constitutional rights."). It is not sufficient to show that an injury or accident could have been avoided if the employee had better or more training. *See City of Canton v. Harris*, 489 U.S. 378, 391 (1989). Plaintiffs fail to plead a viable failure to train or supervise claim for several reasons. First, they do not claim that Gutierrez was responsible for training the "individual law enforcement Defendants regarding how to identify and respond to an active shooter situation," as noted above *See* Dkt. 12 at ¶ 213. Second, Plaintiffs fail to allege Gutierrez ever trained anyone. Third, Plaintiffs fail to identify how the training Gutierrez gave to law enforcement, or more accurately, the lack of training she was responsible for giving, was inadequate or even remotely connected to any constitutional violation. *See Zarnow*, 614 F.3d at 170 (noting the Fifth Circuit requires a plaintiff to "allege with specificity how a particular training program is defective."). Lastly, Plaintiffs fail to plead facts establishing Gutierrez was deliberately indifferent. These pleading deficiencies destroy Plaintiffs' claims and, as such, this Court should dismiss.

  4. *Plaintiffs did not sustain, nor do they allege facts to establish, a cognizable Fourth Amendment seizure claim against Principal Gutierrez sufficient to overcome her qualified immunity.*

    i. <u>The Students do not assert any cognizable violation of their Fourth Amendment rights by Gutierrez.</u>

To the extent the Students claim that their Fourth Amendment rights were violated by Gutierrez for unreasonably seizing them, their claims are insufficient to overcome her qualified immunity. This is so because the facts alleged do not satisfy either of the two necessary prongs. *See Saucier*, 533 U.S. at 201. To be sure, Plaintiffs allege Gutierrez attempted to initiate the lockdown on the Raptor application and, after having "difficulty making the alert because of a bad wi-fi signal," called Chief Arredondo who instructed her to "shut it down." *See* Dkt. 12 at ¶ 115. Subsequently, Gutierrez told the head custodian to ensure that the doors were all locked. *Id.* In

these facts, Plaintiffs fail to identify any constitutional right of theirs that Gutierrez violated. Even assuming, *arguendo,* that Plaintiffs are asserting Gutierrez had a constitutional duty to make "an immediate 'Lockdown' announcement;" it is insufficient to overcome qualified immunity, as that "constitutional right" – and Gutierrez's alleged constitutional duty – are not clearly established in the Fifth Circuit. *Id.* This result is consistent with the legal trend that has consistently veered toward giving school administration wide latitude to exercise judgment and discretion when it comes to keeping students safe – not away from it. *New Jersey v. T.L.O.*, 469 U.S. 325, 333 (1985) ("The majority of courts that have addressed the issue of the Fourth Amendment in the schools have … reached a middle position: the Fourth Amendment applies to searches conducted by school authorities, but the special needs of the school environment require assessment of the legality of such searches against a standard less exacting than that of probable cause."). Thus, Gutierrez's qualified immunity stands, and Plaintiffs' claims must be dismissed.

    ii.  <u>The Parents also fail to assert any cognizable violation of their Fourth Amendment rights by Gutierrez.</u>

To the extent Plaintiffs claim that the Parents were seized by way of not being allowed into the school and by being "restrained, handcuffed, and pepper-sprayed, [and] tased," their argument against Gutierrez fails. *See* Dkt. 12 at ¶ 59. First, they do not allege any facts to suggest that any of the Parents were the ones who were injured, tased, restricted, etc., in any way. And second, even if they were directly impacted, there is no allegation that Gutierrez was the one responsible. Indeed, Plaintiffs plead the opposite, that Gutierrez was in her office on lockdown the entire time until she relocated to the cafeteria. *See* Dkt. 12 at ¶ 115. Accordingly, because they fail to allege any constitutional duty owed to them by Gutierrez, her qualified immunity remains, and Plaintiffs' claims must be dismissed.

C. **Gutierrez is a professional employee of the District and therefore entitled to professional immunity to Plaintiffs' state law claims.**

The Texas Education Code provides in part:

> A professional employee of a school district is not personally liable for any act that is incident to or within the scope of the duties of the employee's position of employment and that involves the exercise of judgment or discretion on the part of the employee except in circumstances in which a professional employee uses excessive force in the discipline of students or negligence resulting in bodily injury to students.

Tex. Educ. Code § 22.0511(a); s*ee also LeLeaux v. Hamshire-Fannett Indep. Sch. Dist.*, 835 S.W.2d 49, 52-53 (Tex. 1992). Using Plaintiffs' own pleadings, Plaintiffs allege Gutierrez was at all relevant times principal of the District. *See* Dkt. 12 at ¶ 22. As such, Gutierrez qualifies as a "professional employee of a school district." *See* Tex. Educ. Code § 22.051(a)(1).

Further, and as far as one can gather from the other facts pled, any actions taken or inaction by Gutierrez as alleged by Plaintiffs were exercises of judgment within the scope of her employment and duties as the principal of one of the District's campuses as a matter of law. *See generally,* Dkt. 12. To be sure, "[i]nvestigating and acting on gathered facts has been characterized as a discretionary function." *Fowler v. Szostek*, 905 S.W.2d 336, 342 (Tex. App.—Houston [1st Dist.] 1995, no writ) (citing *Albright v. Department of Human Serv.*, 859 S.W.2d 575, 578 (Tex. App.—Houston [1st Dist.] 1993, no writ)); *see also Ramos v. Tex. Dep't of Pub. Safety,* 35 S.W.3d 723, 727 (Tex. App.—Houston [1st Dist.] 2000, pet. denied) ("If an action involves personal deliberation, decision, and judgment, it is discretionary."). Additionally, responding to an emergency situation, which is what Gutierrez was doing, is routinely considered by courts to be a discretionary function as a matter of law. *See City of San Angelo Fire Dep't v. Hudson*, 179 S.W.3d 695, 704 (Tex. App.—Austin 2005, no pet.) (manner of firefighters' driving in response to emergency call was discretionary function as matter of law); *see also City of Houston v. Flaniken*,

16

108 S.W.3d 555, 557 (Tex. App.—Houston [14th Dist.] 2003, no pet.) (manner of operating ambulance in response to emergency situation was discretionary function as matter of law); *City of Austin v. Albarran*, No. 03-10-00328-CV, 2011 WL 2533751, at *4 (Tex. App.—Austin June 23, 2011, no pet.).

As plead, Plaintiffs' facts establish that Gutierrez was both, responding to an emergency, and acting on gathered facts. For example, Plaintiffs plead that when the Raptor application failed, Gutierrez immediately phoned the chief of police for the District who informed her to shut the school down. *See* Dkt. 12 ¶ 115. This led to Gutierrez instructing the head custodian to ensure all the doors were locked. *Id.* Clearly, the decisions that Gutierrez made, including the decision not to communicate the lockdown alert over the school's intercom, were exercises of judgment based on the facts available to her. *Id.* Thus, because Gutierrez's actions and inactions were exercises of judgment as a matter of law, her professional immunity remains intact.

Moreover, neither exception laid out in the Texas Education Code is applicable. To restate them, the Code provides personal professional immunity "…except in circumstances in which a professional employee uses excessive force in the discipline of students or negligence resulting in bodily injury to students." Tex. Educ. Code § 22.0511(a). It is well-established that in both instances, either where a professional employee uses excessive force or where the employee acts with negligence and causes bodily injury to students, the professional employee must be in the process of disciplining a student. *See Barr v. Bernhard*, 562 S.W.2d 844, 849 (Tex. 1978) ("We conclude that the Legislature intended… to limit the liability of professional school employees to certain acts incident to the disciplining of students."); *see also Rogers v. Irving Indep. Sch. Dist.*, No. 11-93-227-CV, 1994 WL 16189731, at *1 (Tex. App.—Eastland Feb. 17, 1994, no writ) ("The exception applies only to circumstances involving the discipline of students."). Because Plaintiffs

17

have failed to allege anything to suggest Gutierrez was disciplining a student in any capacity, their claims must be dismissed.

D. **All state claims against Gutierrez are barred as Plaintiffs have failed to exhaust all remedies.**

The Texas Education Code provides an additional protection to Gutierrez under Section 22.0514. Under this section, "a person may not file suit against a professional employee of a school district unless the person has exhausted the remedies provided by the school district for resolving the complaint." Tex. Educ. Code § 22.0514. These remedies, for example, consist of going through the District's grievance process.[3] Plaintiffs' failure to first initiate the administrative grievance process when attempting to hold Ms. Gutierrez liable eliminates the trial courts' subject matter jurisdiction. *See Melendez v. Houston Indep. Sch. Dist.,* 418 S.W.3d 701, 709 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (finding that, because the plaintiff "did not exhaust, or even initiate, the administrative process … the trial court was without jurisdiction to hear her claims."). Thus, because the filing of this lawsuit against Gutierrez and the District appears to be the first remedy sought by Plaintiffs, they have failed to exhaust the administrative remedies provided to them and their claims must be dismissed.

E. **Plaintiffs are not entitled to use IIED as a gap-filler tort as they allege more established tort doctrines.**

The Texas Supreme Court has identified the claim of IIED as a "gap-filler" tort, "judicially created for the limited purpose of allowing recovery in those rare instances in which a defendant intentionally inflicts severe emotional distress in a manner so unusual that the victim has no other recognized theory of redress." *Hoffmann-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004) (citing to *Standard Fruit and Vegetable Co. v. Johnson*, 985 S.W.2d 62, 68 (Tex. 1998)).

---

[3] A link to the District's Board Policy can be found on its website at: https://www.ucisd.net/domain/17.

The Court cautions that IIED "should not be extended to circumvent limitations placed on the recovery of mental anguish damages under more established tort doctrines." *Johnson*, 985 S.W.2d at 68 (Tex. 1998). In this case, Plaintiffs have alleged numerous other causes of actions. Therefore, Plaintiffs' IIED claim for relief should be dismissed against Gutierrez.

## CONCLUSION AND PRAYER

Mandy Gutierrez respectfully requests that this Court grant her motion to dismiss and dismiss Plaintiffs' claims against her with prejudice.

Respectfully submitted,

ROGERS, MORRIS & GROVER, L.L.P.

/s/ Clay T. Grover

CLAY T. GROVER
Attorney-in-Charge
State Bar No.  08550280
Fed. I.D. No. 15064
cgrover@rmgllp.com
JONATHAN G. BRUSH
State Bar No. 24045576
Fed. I.D. No. 619970
jbrush@rmgllp.com
DILLON A. BREAZEALE
State Bar No. 24131284
Fed. I.D. No. 3805269
dbreazeale@rmgllp.com
5718 Westheimer, Suite 1200
Houston, Texas 77057
Telephone:     713/960-6000
Facsimile:      713/960-6025

                                            DAVIS, CEDILLO & MENDOZA, INC.

                                            /s/ Ricardo G. Cedillo
                                            By Permission Clay T. Grover

                                            _____
                                            RICARDO G. CEDILLO
                                            State Bar No. 04043600
                                            rcedillo@lawdcm.com
                                            755 E. Mulberry Avenue, Suite 250
                                            San Antonio, Texas 78212
                                            Telephone:     210/822-6666

                                            ATTORNEYS FOR MANDY GUTIERREZ

## CERTIFICATE OF SERVICE

      I hereby certify that on January 12, 2023, a true and correct copy of the foregoing was served on counsel of record *via* the CM/ECF system.

                                      **Stephanie Sherman**
                                ssherman@baumhedlundlaw.com
                             **Monique Alarcon (*Pro Hac Vice*)**
                              malarcon@baumhedlundlaw.com
                                      **Shawn C. Brown**
                                shawn@shawnbrownlaw.com
                                  *Attorneys for Plaintiffs*

                                       _____
                                       Counsel for Mandy Gutierrez